UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO: 14-1119 |
| M/V GOLDEN EAGLE III | SECTION: "J"(4) |

**ORDER AND REASONS**

Before the Court is Plaintiff First American Title Insurance Company's *ex parte* **Rule E(9) Motion for Interlocutory Sale of the M/V GOLDEN EAGLE III (Rec. Doc. 11)**. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth more fully below.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This action arises out of Plaintiff's claims against the M/V GOLDEN EAGLE III *in rem* following its owners' default on their loan obligation, which was secured by a preferred mortgage of vessel later assigned to Plaintiff.[1] On May 16, 2014, Plaintiff

---

[1] The M/V GOLDEN EAGLE III is a 33.3-foot pleasure boat. Shirl Gilbert and Mabel Edmonds purchased the vessel through a Bill of Sale from Sea Ray Sport Yachts, Inc. on or about May 11, 2002. In connection with the purchase, Gilbert and Edmonds executed a Promissory Note on June 1, 2002 in the amount of $185,643.63 in favor of Heritage Bank. Gilbert and Edmonds also granted Heritage Bank a Preferred Mortgage of Vessel. On or about October 23, 2008, the Preferred Mortgage of Vessel was assigned by Heritage Bank to Plaintiff. The Preferred Mortgage, of which Plaintiff is now mortgagee, acts as a lien on the vessel and gives rise to a maritime lien against the vessel pursuant to general maritime law

1

filed a verified complaint in the Eastern District to commence process against the vessel. (Rec. Doc. 1) That same day, Plaintiff sought (Rec. Doc. 2) and received (Rec. Docs. 6, 7) a warrant of arrest against the vessel *in rem*. The Court also granted Plaintiff's motion (Rec. Doc. 3) to appoint Bill Evans of Whelton Marine, LLC as the substitute custodian of the vessel. (Rec. Doc. 8) Although publication of the seizure has now run, no party has made a claim to the vessel. Plaintiff is unaware of any efforts by the owner to release or bond the vessel. The vessel incurs expenses in the amount of $575 per month, the amount the curator charges to keep the vessel in its current location and condition. The owners have not made any payments on the mortgage, and as of July 30, 2014, the outstanding balance on the mortgage was $192,534.98. (Rec. Doc. 12-2) An appraisal reveals that the current fair market value of the vessel is between $50,000 and $60,000. Id.

**LEGAL STANDARD**

Federal Rule of Civil Procedure Supplemental Admiralty Rule E(9)(a)(i) authorizes courts to order the interlocutory sale of a vessel:

On application of a party, the marshal, or other person

---

and the Federal Maritime Lien Act, 46 U.S.C. § 31341-31343.

> having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is an unreasonable delay in securing release of the property.

Fed. R. Civ. P., Supp. Admiralty Rule E(9)(a)(i). "A showing of only one of the three criteria is sufficient for the Court to order an interlocutory sale." Rowan Companies, Inc. v. M/V FR8 PRIDE, No. C-12-163, 2012 WL 5465964, at *2 (S.D. Tex. Oct. 30, 2012).

## DISCUSSION

Plaintiff argues that it is entitled to an interlocutory sale of the vessel pursuant to Federal Rule of Civil Procedure Supplemental Admiralty Rule E(9)(a)(i). First, Plaintiff argues that the expense of keeping the vessel under arrest is disproportionate to its value. The accrued maintenance costs for the vessel as of July 30, 2014, totaled $1,725, and every month that passes costs Plaintiff an additional $575. (Rec. Doc. 12-2) Further, Plaintiff can only hope to cut its losses; the value of

3

the boat is between $50,000 and $60,000, whereas the outstanding balance on the mortgage of the vessel is $192,534.98. Id. Next, Plaintiff remarks that no party has taken any action to preserve, use, or secure the release of the M/V GOLDEN EAGLE III although it has been under arrest for two months. Plaintiff does not allege that the vessel has deteriorated since its arrest. Plaintiff then concludes that it is entitled to interlocutory sale. Additionally, Plaintiff asks this Court to permit the sale of the vessel to take place by private sale.

**A. Availability of an Interlocutory Sale**

Although it is a close call, the Court finds that Plaintiff has shown the existence of criteria permitting the Court to order an interlocutory sale of the vessel. The Court agrees that, in light of the circumstances, "the expense of keeping the property is excessive or disproportionate." See Fed. R. Civ. P., Supp. Admiralty Rule E(9)(a)(i). To date, Plaintiff has expended $1,725 to cover the costs of the substitute custodian. Such maintenance will continue to cost Plaintiff $575 per month. Although these expenses may not seem excessive compared with other cases permitting an interlocutory sale of a vessel, see, e.g., Merchants Nat. Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d 1338 (5th Cir. Unit A Dec. 1981)(finding interlocutory

4

sale was justified where excessive costs totaled $17,000 per month), the Court is cognizant of the fact that here Plaintiff seeks only to cut its losses. The sale of the $50,000-$60,000 vessel will not allow Plaintiff to recoup the full outstanding balance of the mortgage, $192,534.98. Further, a scheduling order has not issued in this case. It is clear that if the Court were to find that the expenses were not excessive today, such expenses would become excessive or disproportionate before the Court could dispose of the case. The Court will not deny the motion today, only to grant it in one month's time. Refusing the interlocutory sale at this stage would only serve to increase overall maintenance costs, thereby inhibiting Plaintiff's ability to minimize its losses.[2] Because the expense of maintaining the vessel is excessive, the Court will grant the motion for interlocutory sale of the vessel.

**B. Means of the Interlocutory Sale**

Plaintiff further prays that this Court permit Plaintiff to sell the vessel via private sale. Plaintiff argues that a private

---

[2] "The rule does not specify whether disproportionateness is measured against the amount sought or the value of the vessel. Some courts have indicated that the value of the vessel may be the relevant comparitor." John W. Stone Oil Distributor, L.L.C. v. M/V LUCY, No. 09-4440, 2009 WL 4166605, at *1 n.2 (E.D. La. Nov. 20, 2009). Here, given the low value of the vessel relative to the amount sought, this interpretation of the rule strengthens the Court's finding that the expense of maintenance is excessive or disproportionate.

sale will allow it to obtain a better price for the vessel. Plaintiff cites to an Eastern District of Louisiana opinion in support of its argument (Rec. Doc. 11-1, p. 4 n.4), but the opinion does not mention whether the sale was to take place by private or public means. The opinion certainly does not order that the sale take place by private means. In the absence of any compelling argument in support of a private sale, the Court will deny the request to allow the sale to take place by private means.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Interlocutory Sale of the M/V GOLDEN EAGLE III* is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** the motion for interlocutory sale, but **DENIES** Plaintiff's request for an order permitting the sale to take place by private means.

New Orleans, Louisiana, this 7th day of August, 2014.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE